UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FAHAD GHAFFAR, | ) |
| | ) |
| Plaintiff, | ) **Civil Action No.** _____ |
| | ) |
| v. | ) [*JURY TRIAL DEMANDED*] |
| | ) |
| JOHN PAULSON, PAULSON PRV | ) |
| HOLDINGS, LLC, AND PAULSON | ) |
| 2009 FAMILY TRUST, | ) |
| | ) |
| Defendants. | |

## COMPLAINT

## NATURE OF THE ACTION

This action arises out of the deceitful and wrongful conduct of the Defendants in their dealings with the Plaintiff Fahad Ghaffar. As set forth in greater detail below, Mr. Ghaffar is a successful entrepreneur, philanthropist and investor in Puerto Rico. In February 2022, based on misrepresentations made by John Paulson on behalf of the 2009 Trust, Mr. Ghaffar invested $17,000,0000 into a note made by Defendant Prv Holdings which was to be converted to a 50% equity interest in non-party F40. In connection with the sale of the convertible note to Mr. Ghaffar, Paulson misrepresented both the terms of the profits interest that would be paid as consideration for the note and the conversion feature. As if that was not enough, Paulson then exploited Mr. Ghaffar for 16 months of services while giving lip service to the misrepresented terms of the convertible note which he slickly failed to ever produce.

## PARTIES

1. Plaintiff Fahad Ghaffar ("Ghaffar") is an individual and a resident of Puerto Rico,

1

2. Defendant John Paulson ("Paulson") is an individual and a resident of New York who conducts business in Puerto Rico, among other places. As is set forth more fully below, in 2008 Paulson played a notable role in the CDO scam which resulted in Goldman Sachs & Co. paying a $550,000,000 fine.

3. Upon information and belief, Defendant Paulson 2009 Family Trust (the "Trust") is a trust established by Paulson allegedly for the benefit of his children which owns Defendant Prv Holdings LLC. Upon information and belief, Paulson is a trustee of the Trust and the Trust is organized and administered in Delaware. Upon information and belief, the Trust is actually a vehicle used by Paulson to increase his personal wealth.

4. Defendant Paulson Prv Holdings LLC ("Prv") is a Delaware limited liability company. Upon information and belief, Prv is wholly owned by the Trust and was formed as a vehicle through which Paulson would conduct certain Puerto Rico based business. At all times relevant hereto, Prv was the holder of all F40 membership interests, including the 50% membership interest underlying the convertible note at issue herein.

## RELEVANT NON-PARTY

5. F40 LLC ("F40") is a Puerto Rico limited liability company and is wholly owned by Prv. After Ghaffar purchased the convertible note, Prv appointed Ghaffar as the President and CEO of F40 and Ghaffar served dutifully in that role without pay until August 2023.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

7. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332. Ghaffar resides in Puerto Rico. Paulson resides in New York. Prv is a citizen of New York where its sole member resides. The Trust is domiciled in Delaware.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1331(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## RELEVANT FACTS

9. Paulson founded a hedge fund known as Paulson & Co. Inc. in or around 1994. Upon information and belief, at its peak, Paulson & Co. Inc. managed over $30 billion in assets, but subsequently suffered substantial losses. In 2020 the hedge fund converted to a family office dedicated to managing Paulson's assets and stopped managing external investor capital.

10. Paulson gained substantial notoriety during the financial crisis of 2008 in connection with fraudulent shorting of collateralized debt obligations ("CDO"). Paulson paid Goldman Sachs $15 million to structure and market a particular CDO to its clients so that Paulson could "short" it in anticipation of a price decrease. Put otherwise, Paulson paid Goldman Sachs to let him select the investments of a pooled investment vehicle which he would soon thereafter sell short, i.e., it let him design a security intended to fail so that he could reap the profits.

11. Goldman Sachs paid a $550 million fine to settle the SEC's securities fraud enforcement action involving its transaction with Paulson.

12. At all relevant times, Paulson was acting on behalf of Prv and the Trust.

13. Mr. Ghaffar was born in Karachi, Pakistan. He later moved to the United States and graduated from the University of Virginia with a degree in economics and finance. After several prominent real estate related positions, in 2011, Mr. Ghaffar founded his own company

focused on commercial real estate transactions and soon began exploring investment opportunities in Puerto Rico. Today, Ghaffar's investments are exclusively in Puerto Rico where he has become fully committed as a member of the community and a known philanthropist.

14.     Mr. Ghaffar met Paulson in or around 2013. About that time, Mr. Ghaffar began working with Paulson and, at times, coinvesting.

15.     On or about February 4, 2022, Prv purchased 100% of F40 for approximately $103 million.[1]

16.     Prior to the closing, Paulson became skittish about investments and Puerto Rico. Shortly before the deal was scheduled to close, Paulson contacted Ghaffar and solicited Ghaffar to invest in F40 through an automatically converting note as described below.

17.     Paulson told Ghaffar that in exchange for $17 million he would receive a convertible note made by Prv (the "Convertible Note") which was to have the following features: a) until F40 obtained approval from the auto manufacturers for Ghaffar to hold a direct membership interest,[2] Ghaffar was to receive (i) 10% of the net profits annually for his service to the company and (ii) a profits interest amounting to 50% of the annual profits remaining after the 10% (essentially Ghaffar's salary) was deducted; and b) after F40 obtained approval for Ghaffar's membership interest, Ghaffar's profit interest would automatically convert to a 50% membership interest in F40 and Ghaffar would only receive 50% of the distributed profits.

---

[1] Prv purchased the assets of an entity known as Gomez Hermanos Kennedy, LLC ("GHK") and immediately transferred its assets and operations to F40.
[2] F40, likes its predecessor GHK, is a dealer of high end luxury automobiles with exclusive dealerships in Puerto Rico. The auto manufacturers require information on the equity structure and owners of the purchasing entity and must approve any changes in ownership.

4

18. Based on the above representations by Paulson regarding the Convertible Note, on or about February 7, 2022, Ghaffar wired the $17 million to complete the purchase of the Convertible Note.

19. These representations by Paulson regarding the profits interest and conversion of the Convertible Note were knowingly false when made.

20. Defendants failed to provide evidence of the Convertible Note to Ghaffar.

21. Pursuant to Paulson's appointment, Ghaffar served as President and CEO of F40 and Ghaffar in fact provided services to F40 from February 2022 to August 18, 2023. Under Ghaffar's leadership, F40 operated profitably and profits increased 100% in about one year.

22. During that period, Paulson, directly and indirectly through his lawyers, accountants and employees, continued to misrepresent to Ghaffar that he had purchased a 50% interest in F40, initially in profit payouts to be followed by equity/membership via the Convertible Note.

23. At numerous times since the February 7, 2022 securities purchase, Ghaffar requested that Paulson and/or his agents provide him with the documentation evidencing his purchase of the Convertible Note. Paulson's agents repeatedly made misrepresentations that the delivery of such documentation was imminent. For example, on March 23, 2023, in response to an inquiry from Ghaffar concerning the failure to deliver the note, attorneys for Paulson indicated that they are still working on the note with Paulson's general counsel and head of tax, because the features are "quite intricate."

24. Indeed as recently as May 16, 2023, Matthew Lebin, Paulson's Head of Tax, with a copy to Paulson's general counsel, confirmed the terms of Ghaffar's $17 million investment as follows:

**Project Race:**
F40 LLC –
Fahad 0% equity/PRV 100% equity - Fahad will have a convertible note that will exercise into 50% equity upon manufacturer consent
Services agreement for 10% base fee of total profits and then additional fee for 50% of remaining profits. Additional fee will turn off upon conversion of note to equity.
**Fahad 55% net profits - 10% fee + 50% of remaining 90%**

25. On or about August 18, 2023, Paulson e-mailed Ghaffar purporting to remove Ghaffar from all of his positions with F40, despite having written to Hyundai de San Juan just a few days earlier on August 15, 2023, confirming that Ghaffar was the President and CEO of F40.

26. On August 31, 2023, Ghaffar formally and explicitly made a further demand for delivery of the documentation evidencing the Convertible Note.

27. Paulson responded with further empty promises of an instrument for "consideration" as if the terms of the profits interest and conversion feature had not been set at the time of purchase. This subterfuge was in furtherance of the securities fraud.

## FIRST CLAIM FOR RELIEF

**Securities Fraud in Violation of 15 U.S.C. 78(j)(b) and 17 C.F.R. 240.10b-5**
**(Against All Defendants)**

28. Ghaffar repeats and realleges the allegations of paragraphs 1 through 27 as if fully set forth here.

29. Section 10(b) of the Exchange Act prohibits the "use or employ" in connection with the purchase or sale of any security[,] … [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe."

30. Rule 10b-5, which was promulgated by the SEC to implement Section 10(b), makes it unlawful for anyone engaged in the purchase or sale of a security:

 a. To employ any device, scheme, or artifice to defraud,

      b. To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

      c. To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person[.]

17 C.F.R. 240.10b-5.

31. Paulson solicited Mr. Ghaffar to purchase the Convertible Note.

32. In return for Ghaffar's investment, Paulson offered the Convertible Note, a security.

33. Ghaffar relied on Paulson's representations about the material terms of the Convertible Note to invest $17 million.

34. Paulson's representations about the Convertible Note were false and Prv has neither delivered a security to Mr. Ghaffar nor paid the profits interest due for 2022.

35. Paulson falsely and knowingly represented that he would deliver documentation evidencing Ghaffar's purchase of the Convertible Note and that Ghaffar's investment would lead to his obtaining a membership interest in F40.

36. Paulson and his agents repeated the false statement that Ghaffar was to receive documentation evidencing his purchase of the Convertible Note. For example, on June 1, 2023, many months after Paulson's initial late January and early February representations, attorneys representing Paulson advised Ghaffar that documentation of the Convertible Note were being revised and that Paulson would be signing them shortly.

37. Paulson made these representations with scienter, i.e., for the purpose of obtaining Ghaffar's investment and with the intent to benefit himself and to reap the benefit of Ghaffar's investment without having to pay for such benefit.

38. Ghaffar reasonably relied on Paulson's representations when determining to invest $17 million and to purchase the Convertible Note from Paulson.

39. Paulson's representations about the Convertible Note, including that documentation thereof would be provided, were material to Ghaffar's investment decision.

40. Paulson's representations about the Convertible Note were made "in connection with" Ghaffar's purchase of the Convertible Note, because they directly influenced his decision to make the investment.

41. Ghaffar would not have purchased the Convertible Note and invested $17 million, but for Paulson's misrepresentations regarding the Convertible Note, including his promise to deliver documentation thereof.

42. Ghaffar would not have worked tirelessly on behalf of F40 to increase its profits for the benefit of Paulson, but for Paulson's misrepresentations regarding the Convertible Note.

43. As a direct and proximate result of Paulson's material misrepresentations regarding the Convertible Note, Ghaffar has suffered damages, in an amount to be trial, but including and not limited to the following: a) his $17 million investment; b) his uncompensated work on behalf of F40 as its President and CEO; c) his inability to benefit from the increased value of his Convertible Note in F40 based upon its increase in value due to Ghaffar's efforts; and d) his share of profit distributions that he would be entitled to based upon the Convertible Note.

## SECOND CLAIM FOR RELIEF

**Unjust Enrichment in Violation of Puerto Rican Law**
**(Against Prv and the Trust)**

44. Ghaffar repeats and realleges the allegations of paragraphs 1 through 43 above as if fully set forth here.

45. The Defendants were enriched by Ghaffar's $17 million investment.

46. The Defendants were enriched by Ghaffar's labor and services provided to F40.

47. Ghaffar has been correspondingly impoverished.

48. There is no principal whereby the Defendants should be enriched at Ghaffar's expense.

49. It is against equity and good conscience for the Defendants to retain both Ghaffar's initial investment, as well as the profits and value created by his management of F40's business.

50. As a result, Ghaffar has been damaged in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

**Breach of Contract Pursuant to**
**Articles 1158, 1167 and 1168 of the Puerto Rico Civil Code of 2020**
**(Against Prv and the Trust)**

51. Ghaffar repeats and realleges the allegations of paragraphs 1 through 50 above as if fully set forth here.

52. Ghaffar and Paulson entered into an agreement whereby Ghaffar would purchase the Convertible Note in exchange for $17 million.

53. Paulson was required to deliver the Convertible Note to Ghaffar.

54. Paulson failed to deliver the Convertible Note and thereby breached the contract.

55. As a result, Ghaffar has been damaged in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

**Dolus/Fraud Pursuant to Article 1168 of the Puerto Rico Civil Code of 2020**
**(Against All Defendants)**

56. Ghaffar repeats and realleges the allegations of paragraphs 1 through 55 above as if fully set forth here.

57. Paulson made misrepresentations to Ghaffar concerning the Convertible Note.

58. These misrepresentations were material to the transaction that Paulson induced Ghaffar into entering into.

59. These misrepresentations were made with the intent that Ghaffar act on them and transfer $17 million to an entity owned and controlled by Paulson.

60. As a result, Ghaffar has been damaged in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

**Damages for Bad Faith Pursuant to Article 18 of the Puerto Rico Civil Code of 2020**
**(Against All Defendants)**

61. Ghaffar repeats and realleges the allegations of paragraphs 1 through 60 above as if fully set forth here.

62. The Defendants acted in bad faith in obtaining Ghaffar's investment in F40.

63. The Defendants acted in bad faith in obtaining Ghaffar's labor and services on behalf of F40.

64. The Defendants repeatedly and consistently have misrepresented to Ghaffar that he would receive documentation evidencing his purchase of the Convertible Note, but have purposefully not provided such documentation.

65. The Defendants have acted in bad faith for the purpose of obtaining benefits from Ghaffar, while denying benefits that were due to Ghaffar.

66. By reason of the foregoing, Ghaffar has been damaged in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

**Violation of the Uniform Securities Act of Puerto Rico**
**(Against All Defendants)**

67. Ghaffar repeats and realleges the allegations of paragraphs 1 through 66 above as if fully set forth here.

68. Section 890 of the Uniform Securities Act of Puerto Rico provides that any person who offers or sells a security by means of a false statement of a material fact or omitting to state a material fact needed to prevent that any statement made, in the light of the circumstances under which it was made, leads to misunderstanding (the buyer not knowing of the falsehood or omission), and does not support the burden of proof that he did not know, and in exercising reasonable prudency, could not have known of the falsehood or omission, shall be liable to the person who buys the security.

69. Ghaffar purchased a security from Paulson.

70. Paulson sold such security by means of a false statement of material fact, and did so knowingly, i.e., Paulson misrepresented that documentation evidencing the Convertible Note would be provided to Ghaffar, that it would indeed automatically convert to a member ship interest in F40, and that it would provide compensation for Ghaffar's services provided to F40.

71. By reason of the foregoing, the Defendants are liable to Ghaffar in an amount to be proven at trial.

# SEVENTH CLAIM FOR RELIEF

## Constructive Trust
### (Against All Defendants)

72. Ghaffar repeats and realleges the allegations of paragraphs 1 through 70 above as if fully set forth here.

73. By reason of the foregoing, the monies received by the Defendants, and the shares of profits that Ghaffar is entitled to based upon the terms of the Convertible Note, should be held in constructive trust for the benefit of Ghaffar and the amounts rightfully due to Ghaffar should be paid from the corpus of such trust.

WHEREFORE, Plaintiff Fahad Ghaffar demands judgment as follows:

a) Awarding damages in an amount to be determined at trial but presently believed to exceed $50,000,000.00;

b) Imposing a constructive trust over the monies received by Defendants Paulson, Prv and the Trust;

c) Awarding specific performance of the contract between Ghaffar and the Defendants pursuant to Article 1073 of the Puerto Rico Civil Code of 2020;

d) Granting such other equitable or injunctive relief as may be appropriate under the circumstances;

e) Awarding plaintiff his costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees, and other costs, interest, and disbursements; and

f) Granting such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

Dated: San Juan, Puerto Rico
September 6, 2023

*/s/ Harold D. Vicente Colon*
Harold D. Vicente-Colón
USDC -PR 211805
hdvc@vclawpr.com

*/s/ Harold D. Vicente Gonzalez*
Harold D. Vicente Gonzalez
USDC-PR 117711
Vicente Law LLC
PO Box 11609,
San Juan PR 00910
Tel. (787) 751-8000
Fax (787) 756-5250
hvicente@vclawpr.com

/s/ José A. Andréu-Fuentes
José A. Andréu-Fuentes
USDC 204409
jaf@andreu-sagardia.com
/s/ Alfredo M. Umpierre-Soler
Alfredo M. Umpierre-Soler
aumpierresoler@gmail.com
USDC-PR 226205
261 Ave. Domenech
San Juan, PR 00918-3518
787.754.1777


RUSSO PLLC

*/s/Martin P. Russo*
Martin P. Russo (Pro Hac Vice Admission Pending)
Robert Sidorsky (Pro Hac Vice Admission Pending)
Daniel Branower (Pro Hac Vice Admission Pending)
350 Fifth Avenue, Suite 7230
New York, New York 10118
(212) 363-2000
martin@russopllc.com