**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FAHAD GHAFFAR,                                              Case No: 3:23-cv-01455(CVR)

                        *Plaintiff*,

                 - against -

JOHN PAULSON and PAULSON PRV HOLDINGS,
LLC,

                     *Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### STIPULATION AND ORDER ESTABLISHING THE PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ("ESI")

Pursuant to the Scheduling Order in this action (ECF No. 131) and the agreement reached between Plaintiff and Defendants herein, this Court adopts and orders the following Protocol relating to the Production of Documents and Electronically Stored Information in this Action, which binds all parties and their counsel of record in this Action, whether they currently are involved or become so in the future (collectively, the "Parties").  The failure of this Protocol to address any particular issue is without prejudice to any position that a Party may take on that issue.

## I.      DEFINITIONS

a.      "Action" means the above-captioned matter, and any and all cases consolidated or coordinated with it.

b.      "Document" and "Electronically Stored Information" ("ESI") shall have the same meaning as the usage of these terms in Federal Rule of Civil Procedure 34(a)(l)(A).

c.      "Email" means any electronic message sent or received asynchronously via electronic means, including SMTP and similar protocols, and the file created or received by such means.

d.      "Instant Messages" means communications involving immediate correspondence between two or more users sent via chat client or SMS, including but not limited to Bloomberg Chat, WhatsApp, Telegram, Signal, AOL Instant Messenger, Blackberry Messenger, or any proprietary instant messaging system.

e.      "Native Format" means and refers to the file structure of a document created by the original creating application (in contrast to a Static Image, which is a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .tiff or .jpeg).

f.      "Metadata" means structured information about ESI that is created by the file system or application, embedded in the Document, and sometimes modified through ordinary business use. Metadata of the ESI describes, *inter alia*, the characteristics, origins, usage, and validity of the collected ESI.

g.      "Load file" means an electronic file that is used to import all required production information into a Document database, including, if available, Document images, Extracted Text or OCR text, Native Format files where required by this Stipulation, and Metadata, as well as information indicating Document breaks, and Document relationships such as those between an Email and its attachments and a Document and information related to embedded content.

h.      "OCR" means optical character recognition technology which is capable of reading text-based paper/hard copy documents and making such documents searchable using appropriate software.  The latter text is also referred to as the "OCR text" or "OCR."

i.      "Extracted Text" means the text extracted from a native document, and includes all header, footer, and document body information, including any hidden content, when available.  A

"Text File" is a file containing the full multi-page text of native or near-native files extracted directly from the native file, or, in the case of paper/hard copy documents subject to OCR, a file containing the text resulting from the OCR.

j.      "Media" means an object or device, including but not limited to a disc, tape, computer, or other device, on which data is or was stored.

k.      "Parties" collectively shall mean all named parties to this Action, including any Party added or joined to any complaint in this Action, as well as named parties to actions that may be consolidated into or coordinated with the above-captioned Action.

l.      "Production" or "Produced" includes any exchange of Documents or Electronically Stored Information between the Parties, whether voluntarily or in response to a formal or informal request.

m.      "Search Term" means a combination of words and phrases designed to identify potentially relevant ESI, and includes strings of words and phrases joined by proximity and Boolean connectors.

n.      "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.  A Tagged Image File Format (TIFF) image is an example of a Static Image.

o.      "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

p.      "Structured Data" means ESI stored in a structured format, such as databases or data sets according to specific form and content rules as defined by each field of the database.

q.      "Predictive Coding/Technology Assisted Review" shall mean processes for prioritizing or coding a collection of documents using computerized systems, such as machine-

learning algorithms, that may rely on the judgments of one or more attorneys experienced in the subject matter of a litigation regarding the responsiveness of a subset of documents and extrapolates those judgments to the remaining document collection.  For purposes of this Protocol, Predictive Coding/Technology Assisted Review is synonymous with computer-assisted review, computer-aided review, and content-based advanced analytics or other terms used to refer to search methodologies that rely on machine-based learning to identify responsive documents.

r.      "Unstructured Data" refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data, such as word processing documents, slide presentations, Email, and image files.

## II.    DEFINITIONS

a.      **General**. Pursuant to Federal Rule of Civil Procedure ("FRCP") 5(b)(2)(E), the Parties agree to serve written discovery electronically.  The procedures and protocols outlined herein govern the Production of Documents and ESI by all Parties.  The Parties will take reasonable steps to comply with this agreed-upon protocol for the Production of Documents and Electronically Stored Information ("Protocol"), and a violation of the terms of this Protocol, standing alone, will not provide a basis for sanctions pursuant to FRCP 37(b).  This is without prejudice to the Parties' rights to seek relief in the form of a discovery order and then to pursue sanctions, as provided for by the FRCP or other applicable law.  Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Party requested to produce Documents or ESI ("Producing Party") or a Party requesting Documents or ESI ("Requesting Party").  Further, the Parties do not intend for this Protocol to affect their obligation to meet-and-confer and engage in good faith attempts to resolve differences, or limit their right to file motions

for discovery and production of documents under Rules 26 through 37 of the FRCP.

The production specifications in this Order apply to Documents that are produced in the first instance in this Action.  To the extent that any Party is required to or agrees to produce Documents in this Action that originally were collected or produced in other cases, such Documents may be produced in the same format in which they originally were produced in the other cases.

The Parties agree that nothing in this Protocol is intended to revise or alter the local rules, applicable state or federal statutes, the FRCP, Advisory Committee Notes, or other authorities with regard to the preservation and production of ESI, including but not limited to FRCP 26(b)(1) concerning the Scope in General of Discovery; FRCP 26(b)(2)(B) concerning the Specific Limitations on Electronically Stored Information; FRCP 26(c)(1) concerning Protective Orders; or FRCP 34 concerning Production of Electronically Stored Information.

b.    **Limitations and Non-Waiver**.  The Parties and their attorneys intend by this Protocol to make the disclosures in the format specified herein.  The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and the work-product doctrine.  All Parties preserve their attorney-client privileges, work product protection, and other privileges.  The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds. Further, nothing in this Protocol shall be construed to affect the admissibility of Documents and ESI.  All objections to the discoverability or admissibility of any Documents and ESI are preserved and may be asserted at any time.

c.    **Reservation of Rights**.  For the avoidance of doubt, the inclusion of any platform, program, application, or software in Section I as examples does not create any independent

obligation or commitment to preserve or collect ESI from such platform, program, application, or software.  The Parties reserve all rights to object to any demand to collect or produce ESI from any or all of the examples listed in Section I, subject to the provisions of Section V.

d.      **Modification by Agreement**. Any practice or procedure set forth herein may be varied by written agreement of the affected Parties.  Any Party added or joined to any complaint in this Action and any Party to actions that may be consolidated into or coordinated with the above-captioned matter after the date of this Protocol that seeks to deviate from Protocol set forth herein must obtain leave of Court to do so unless all affected Parties otherwise consent in writing.  Before seeking Court intervention, the Parties shall meet and confer in good faith regarding any modification.

e.      **Modification by Court Order**. Nothing in this Protocol waives the right of any Party to petition the Court for an Order modifying its terms upon good cause shown, provided, however, that counsel for such Party must first meet and confer with the counsel for the opposing Party and the Parties shall use reasonable best efforts to negotiate an exception from or modification to this Agreement and Order prior to seeking relief from the Court.

## III.     PRESERVATION

The Parties agree that they shall continue to take reasonable steps to preserve relevant Documents and ESI that may exist, in accordance with their obligations under applicable law.  By preserving or producing information for the purpose of this Action, the Parties are not conceding that such material is discoverable.

## IV.     PRODUCTION OF STRUCTURED DATA

Where a discovery request requires production of Structured Data, in lieu of producing structured data systems or applications, the Parties shall meet and confer on the content and format

of a data extraction from such structured data source.  The Parties shall discuss and attempt to agree upon the sets of data or fields to be included in the extraction and the format in which data extracted from the data source shall be produced and the producing party shall make all disclosures necessary for the requesting party to understand and evaluate whether the content and format of a proposed data extraction would satisfy a production request, such as the data fields available, the meaning of data fields, as well as codes and abbreviations used in the data source and whether a data dictionary exists, the time period over which data exists, any database scheme, or other relevant information.  In the event that Structured Data is produced, but is unreadable and/or unusable to the Requesting Party, the parties shall meet and confer with respect to a means of production to render the produced Structured Data readable and/or usable, including, without limitation, the production of extracts of such data.    The Parties reserve all rights to object, including but not limited to objections for relevance, undue burden, and/ or inaccessibility.

## V.      IDENTIFICATION OF RESPONSIVE ESI

The Parties shall meet and confer in good faith on Search Terms used to identify potentially responsive ESI from agreed-to custodians.

The Parties will not seek Court intervention on discovery matters without first attempting to resolve any disagreements in good faith.

In the event that a Party identifies ESI that is not reasonably accessible, the Parties shall meet-and-confer regarding the burden and cost associated with collecting, reviewing, and producing such ESI, and present any remaining issues to the Court for resolution.

## VI.     PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

The following production specifications apply to Documents that existed in paper format prior to production ("hard copy documents").  Documents that originated as paper but were

scanned and maintained electronically by a Party prior to inception of this Action shall be produced in accordance with Part VII of this Protocol. The Parties agree to produce hard copy documents in the formats described below, to the extent reasonably practicable and not unduly burdensome. These formats are deemed to be productions in reasonably usable form. If a Producing Party intends to produce any hard copy documents in any manner other than as specified herein, the Producing Party shall notify the Requesting Party of its intent, including production format (*e.g.*, produced as paper, made available for inspection). If the proposed production format is not acceptable to the Requesting Party, the Parties shall meet and confer to determine a mutually acceptable production format for such Documents.

a.      All Documents shall be produced as Bates-stamped TIFF or JPEG images or PDFs, along with an image load/cross reference file, a data load file with fielded Metadata, and Document-level Extracted Text for ESI or OCR text for scanned hard copy Documents.

b.      TIFF images shall be produced in 300x300 dpi Group IV single-page color format. JPEG files shall be produced at a comparable resolution.

c.      **Unitizing Documents**. If a document is more than one page, the unitization of the document will be maintained as it existed when collected by the Producing Party to the extent practicable. Parties may unitize their documents using either physical unitization (*i.e.*, based on physical binding or organizational elements present with the original paper documents, like staples, clips and binder inserts) or logical unitization (*i.e.*, a manual review of the paper to determine what logically constitutes a document, like page numbers or headers).

d.      **Parent-Child Relationships**. The Parties agree that if any part of a Document or its attachments is responsive, the entire Document and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege or work-product protection.

The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved. The child-document(s) should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

     e.    **OCR**. To the extent that documents that exist in paper or hard copy format have been run through optical character recognition ("OCR") software, the full text shall be provided on a document-level in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document.  Text files should be provided in a "Text" folder.  To the extent that a document is redacted, the text files should not contain the text of the redacted portions. Extracted Text and/or OCR text shall not be embedded in the .DAT file.

     f.    **Unique IDs**.  Each image should have a unique filename, which corresponds to the Bates number of that page.  The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC-000001), taking into consideration the estimated number of pages to be produced.  If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.  Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a Party produces in the Action.

     g.    **Data Load Files**.  Documents should be provided with an Opticon Cross-Reference File and Concordance data load file in .DAT format, consistent with the Parties' exchange of sample load files Concordance-compatible image and data load files should be provided in a "Data" folder.

h.      **Metadata**. Each of the Metadata and coding fields set forth in the Parties' example load files shall be produced for that Document, to the extent reasonably available. SMS messages, WhatsApp communications, and similar communications may be produced in TIFF, JPEG, or spreadsheet formats without complete metadata in the format described above, provided that the document produced clearly reflects the date and time of the messages, as well as the relevant sender and recipient(s) in addition to the content of the communication.

## VII.   PRODUCTION FORMAT FOR UNSTRUCTURED ELECTRONICALLY STORED INFORMATION

The Parties agree to produce in the formats described below. These formats are deemed to be productions in reasonably usable form. If any Party contends that particular Documents or ESI warrant a different format, the Parties will meet and confer to determine a mutually acceptable production format for such Documents.

a.      **TIFFs**. All Documents shall be produced as Bates-stamped TIFF or JPEG images or PDFs along with an image load/cross reference file, a data load file with fielded Metadata, and Document-level Extracted Text for ESI or OCR text for scanned hard copy Documents.

b.      TIFF images shall be produced in 300x300 dpi Group IV single-page color format. JPEG files shall be produced at a comparable resolution.

c.      **Extracted Text Files**. The full text of native files should be extracted directly from the native file (not OCR) and should be delivered in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the document should undergo OCR after the text has been redacted in order to remove the redacted text. Extracted Text and/or OCR text shall not be embedded in the .DAT file.

d.      **Unique IDs**. Each image should have a unique filename, which corresponds to the

Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC-000001), taking into consideration the estimated number of pages to be produced.  If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.  Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in this Action.

> e. **Parent-Child Relationships**. The Parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege or work-product protection, the relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved.  The child-document should be consecutively produced immediately after the parent-document.  Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

> f. **Metadata**.  The Parties agree that Metadata will be produced for all ESI, whether produced in Native Format or Static Image formats.  The Metadata produced shall include the metadata fields identified in **Appendix A** (or similarly-named fields), to the extent the information is available in the original ESI file and can be extracted without unreasonable burden using standard litigation support processing platforms (except for vendor-generated fields related to the litigation production, such as "BEGDOC", "ENDDOC", bases for redaction, and Confidentiality Designations).

> To the extent that Metadata does not exist, is not reasonably accessible or available,

would be unduly burdensome to collect, nothing in this ESI Protocol shall require any party to extract, capture, collect or produce such data, provided, however, that where such Metadata is not produced on such grounds, the Producing Party shall disclose which fields it will not produce.  If Metadata is redacted or withheld, the Producing Party will so inform the Requesting Party and record the redaction on any privilege log prepared by the Producing Party; redacted Metadata shall be preserved.  SMS messages, WhatsApp communications, and similar communications may be produced in TIFF, JPEG, or spreadsheet formats without complete metadata in the format described above, provided that the document produced clearly reflects the date and time of the messages, as well as the relevant sender and recipient(s) in addition to the content of the communication.

Nothing in this order shall require any party to manually populate the value for any metadata field appearing in Appendix A herein if such fields cannot be extracted from a Document, with the exception of the following fields, or their equivalents: (1) BegDoc, (2) EndDoc, (3) BegAttach, (4) EndAttach; (5) Custodian, (6) Prod Volume; ; (8) Confidential; (9) Redaction; and (10) NativeLink fields (which may be populated by the party or the party's vendor) where applicable.

g.    **Production of Documents in Native Format**.

1.    The processed native for all spreadsheets (*i.e.*, MS Excel, .CSV, or similar), and electronic information containing audio or video components should be produced and linked to the database by the Metadata field "NativeLink" or similar.

2.    Presentation files (PPT, PPTX, etc.) will be processed to image format showing comments, hidden slides, speakers' notes and similar data.  In addition to image images, Native Files will be provided for presentation files upon request.  The Native File will be named

as the first Bates number of the respective document.  The corresponding Load File shall include Native File information for each native file that is produced.

3.      The Requesting Party may ask for certain other documents and/or databases initially produced in image format to be produced in their Native Format.  The Parties agree to meet-and-confer regarding the ability to produce other file types in Native Format.

4.      Where Native Files are produced in lieu of images, each native file will be assigned a unique Bates number.  The Producing Party will produce a placeholder (a single-page image slip sheet indicating that the native item was produced) along with the file itself in Native Format.  The placeholder will be branded with the production number in the lower right-hand corner and the phrase "PRODUCED IN NATIVE ONLY" or similar branded in the center of the page. The Producing Party will also brand any confidentiality or similar endorsements in the lower left hand corner of the placeholder.

5.      To the extent that a native spreadsheet must be redacted, the Producing Party may redact either the Native File or produce images with burned in redactions in lieu of a Native File and a placeholder image.  If redacting images and to the extent that any of the following can be automated, the Producing Party, or its e-discovery vendor, should make reasonable efforts to: (1) reveal hidden rows, columns or sheets prior to converting the  document to an image format; (2) clear any filters that may conceal information; (3) adjust column widths so that numbers do not appear as "########"; (4) ensure that column and row headings print; (5) ensure that the tab name appears in the header or footer of the document; (6) process comments so that they are produced at the end of the spreadsheet; and (7) process spreadsheets so that they print across then down. If good cause exists, Requesting Party may ask the Producing Party to manually undertake the foregoing for certain documents identified by Bates number by the Requesting Party to the extent

the document was originally produced with concealed information.  The Producing Party shall not unreasonably deny such a request.

6.      **Request for Native Files**. Other than as specifically set forth above, a Producing Party need not produce documents in Native Format. If good cause exists for the Requesting Party to request production of certain documents in Native Format, the Requesting Party may request production in Native Format by providing (1) a list of the Bates numbers of documents it requests to be produced in Native Format; and (2) an explanation of the need for reviewing such documents in Native Format. The Producing Party shall not unreasonably deny such requests. The Producing Party shall produce an overlay to ensure that the "NativeLink" entry in the data load file indicates the relative file path to each Native File in such production, and all Extracted Text and applicable metadata fields.

h.      **Track Changes and Comments.**  To the extent that a Document or ESI contains tracked changes or comments, the Document or ESI should be imaged showing tracked changes and comments.

i.      **Password-Protected Files.**  The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents and ESI are successfully processed for review and production.

j.      **Embedded Documents.** Embedded aspects of documents will be processed in a searchable manner during the initial searching stage.  During the export and review process, only the primary document and any embedded files that were returned by search terms must be reviewed and produced; alternatively, a Party may produce such documents with embedded files in their native formats.  In addition, if other embedded files within a main document are sought by a party, the Requesting Party shall notify the Producing Party, and the extracted embed shall be exported

separately and processed/produced.

k.      **Data Load Files.**  The parties will exchange sample load files.  Upon this exchange, the Requesting Party will have 14 days to respond with Load File change requests.  Nothing in this Order will limit the Parties from discussing Load File changes throughout the course of the Action.

l.      **Deduplication.** A Producing Party shall globally deduplicate by exact duplicate families provided that (i) only exact (cryptographically identical) duplicates are subject to deduplication; (ii) the Producing Party identifies all custodians in the main Custodian metadata field; and (iii) an Email that includes content in the BCC or other blind copy fields shall not be treated as a duplicate of an Email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical.  The Party must use MD5, SHA, or comparable cryptographic hash values to identify document families that are completely duplicative of one another and include such hash values in its production.

m.      **Custodian or Originating Source.** The custodian or originating source shall be identified in the Custodian field of the database load files.  Documents found in the possession of a natural person (or on a natural person's hardware or storage media) should be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (*e.g.*, office, file room, archive, network storage, file share, back-up, hard drive, etc.) should be produced in such a fashion as to identify the department, group, entity, or facility.  A Producing Party shall use a uniform description of a particular custodian across productions.

n.      **Foreign Language.**  Foreign language text files and Metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.

o.      **Date Format**:

1. Dates and times must be concatenated into a single field, with a format of MM/dd/YYYY HH:MM:ss.

2. If a time is not available, such as the estimate date for a coded document, then 12:00 am, or 00:00 should be assigned, *i.e.*, 12/21/1999 00:00.

3. Date delimiters, such as slashes and colons, must be consistent across all fields. In the format of MM/dd/YYYY, there are no spaces and only forward slashes.

4. Date formats must be consistent within any one field.

5. Date formats must be consistent across all fields, *i.e.*, a record with a sent date should have the same format in the last modified date field.

p. **Production Media**.  Producing documents may be done via secure FTP or secure file share, via CD, DVD, flash drive, hard drive, or other mutually agreeable media.  All Production Media may be encrypted, with the Producing Party to provide a decryption key at the time of production.

q. **Naming Convention for Production Media**.  Whether produced via secure FTP, file share, or physical media, the files produced should be combined into a compressed archive file such as .zip, .rar, .7z, etc. The compressed file should be named consistently so as to indicate Producing Party and the sequence of the production.  If the production is made using physical media, the media should be labeled to include (a) text referencing that it was produced in the Forth litigation; and (b) the Bates number range of the materials contained on the media.

r. **Replacement Productions**.  Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the documents being replaced.  If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production" or similar.

s. **System Files.** ESI shall be filtered for file type using the NIST exclusion list ("de-NISTing"). The Parties recognize that to reduce the Document review population, additional file

types may need to be excluded.

## VIII.   ASSERTIONS OF PRIVILEGE

   a.   **Privilege Logs shall be provided containing the following information:**

   1.   a sequential number associated with each Privilege Log record;

   2.   the date of the document;

   3.   the Bates numbers of documents redacted;

   4.   to the extent reasonably available, the identity of all persons who sent, authored, signed or otherwise prepared the document, and identification of which of them are attorneys;

   5.   to the extent reasonably available, the identity of all persons designated as addressees or copyees along with other information about them necessary for the Requesting Party to assess the privilege (*e.g.*, title, department, job function, etc.) and identification of which of them are attorneys;

   6.   the title or subject of a document to the extent the title does not reveal privileged or work-product protected information;

   7.   a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity;

   8.   the type or nature of the privilege asserted (*i.e.*, attorney-client privilege; work product doctrine).

   b.   **Logging of Document Families**.   Where multiple members of a document "family" (*e.g.*, an email attaching a memorandum or other document, etc.) are withheld or redacted on the grounds of privilege, immunity, or any similar claim, these families may be jointly logged as a single entry on the privilege log with an indication in the description field that describes the family relationship, provided however, that information logged must be sufficient to assess the privilege for each family member.   By way of example, for an email with an attached memorandum, the log entry  must provide all of the information outlined in Section VIII.a above for both the email and memorandum, distinguishing the to, from, cc, bcc, dates, description, and

privilege asserted for each document in the single entry.  For document families in which fewer than all of the documents are withheld or redacted as privileged or protected, the privilege log entry for the withheld document(s) shall identify the Bates number of the produced family member.

  c.  The following documents presumptively need not be included on a Privilege Log:

    1.  Communications exclusively between a Party and its outside counsel regarding this Action; and

    2.  Work product created by outside counsel, or by an agent of outside counsel other than a party, regarding this Action and created after commencement of this Action.

## IX. INADVERTENT DISCLOSURE OF ATTORNEY-CLIENT PRIVILEGED OR WORK-PRODUCT PROTECTED DOCUMENTS

**Clawback Procedures.**  Pursuant to Federal Rule of Evidence 502(d), if, in connection with the Action, information subject to a claim of attorney-client privilege or attorney work-product protection is inadvertently disclosed ("Protected Documents"), the disclosure of the Protected Document is not, by itself, a waiver or forfeiture of any claim of privilege or work product protection that a Party would otherwise be entitled to assert with respect to the Protected Document and its subject matter.

  a.  The Producing Party may invoke its rights over any document produced in this litigation subject to the following limitation: If the Requesting Party introduces a document at a deposition, as an attachment to a motion or pleading, or otherwise informs the Producing Party that the Requesting Party intends to rely upon the document, the Producing Party must invoke its rights under this order within 14 days of the document being introduced.

  b.  Upon written notice of the production of a Protected Document by the Producing Party or oral notice if such notice is delivered on the record at a deposition, the Requesting Party must promptly return, sequester, or destroy the specified document and any electronic or hard

copies the Requesting Party has and may not further use or disclose the Protected Document  until the claim that it is a Protected Document has been resolved.  If there is a dispute as to whether a document qualifies as a Protected Documents, the Requesting Party may retain a sequestered copy of the document asserted to be privileged or protected until the dispute is resolved and the Requesting Party need not remove from the record any document that has been previously introduced until such dispute is resolved.

       c.      To the extent that the information contained in a document subject to a claim that it contains privileged or protected information has already been used in or described in other documents generated or maintained by the Requesting Party, then the Requesting Party will not further use such documents until the claim has been resolved.

       d.      If the Requesting Party has disclosed the specified document before being notified of its inadvertent production, it must take reasonable steps to retrieve it.

       e.      The Producing Party shall provide an updated privilege log as called for in Section VIII, as well as any portion of the document that does not contain privileged or protected information.

       f.      The Requesting Party may challenge the assertion of any privilege discussed in Section IX.  Any challenge that cannot be resolved by the Parties will be filed with the court presiding over this Action. It shall be the responsibility of the party seeking to claw-back Document(s) initiate court proceedings, if any.

## X.    COST ALLOCATION

Pursuant to FRCP 26, the Parties generally presume that the Producing Party bears all costs of preservation, retrieval, and production of its reasonably accessible ESI and there may be cost-

sharing or cost-shifting, upon agreement of the Producing and Requesting Parties or upon proper motion and Order of the Court, as to ESI that is not reasonably accessible.

## XI.    THIRD PARTY DOCUMENTS

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the Parties to the Action have requested that third Parties produce Documents in accordance with the specifications set forth herein.  The Issuing Party shall timely notify other Parties when it receives non-party productions, and shall, upon request by other Parties ("Requesting Parties" for purposes of this paragraph), provide copies of such productions to Requesting Parties in the format in which they were received from the third- Party.  Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third Parties to object to a subpoena.

## XII.   AUTHENTICATION

The Parties will meet and confer regarding an authentication stipulation concerning Documents produced in this Action.

## XIII.  CONFIDENTIALITY

The Parties will meet and confer regarding a confidentiality stipulation concerning Documents produced in this Action.

IT IS SO ORDERED.

Dated:  <u>4/22/2024</u>

<u>S/ Camille L. Velez-Rive</u>
Hon. Camille L. Vélez-Rivé United
States District Judge

RUSSO PLLC
<u>*/s/ Martin P. Russo*</u>
Martin P. Russo (*pro hac vice*)
Robert Sidorsky (*pro hac vice*)
Daniel Branower (*pro hac vice*)
350 Fifth Avenue, Suite 7230
New York, New York 10118
(212) 363-2000
martin@russopllc.com

<u>/s/ Jose A. Andreu-Fuentes</u>
José A. Andréu-Fuentes
ANDREU & SAGARDIA LAW OFFICE
*Counsel for Plaintiff*
261 Ave. Domenech
San Juan, PR 00918
Tel.: 787-754-1777 / 754-1888
*jaf@andreu-sagardia.com*

<u>/s/ Alfredo M. Umpierre-Soler</u>
Alfredo M Umpierre-Soler
PMB 703
*Counsel for Plaintiff*
1353 Luis Vigoreaux Ave.
Guaynabo, PR 00966
Tel.: 787-594-4565
*aumpierresoler@gmail.com*

<u>/s/ Juan J. Casillas Ayala</u>
Juan J. Casillas Ayala
CASILLAS SANTIAGO TORRES LLC
*Local Counsel for the Paulson*
*Defendants*
PO Box 195075
San Juan, Puerto Rico 00919-5075
Tel: 787.523.3434
*jcasillas@cstlawpr.com*

<u>/s/ Glen Lenihan</u>
Glen Lenihan *(admitted pro hac vice)*
Oved & Oved LLP
*Counsel for the Paulson Defendants*
401 Greenwich Street
New York, New York 10013
Tel: 212.226.2700
*glenihan@oved.com*

**APPENDIX A: ESI METADATA AND CODING FIELDS**

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| BegDoc | Bates number of the first page of the document. | All | Prefix-0000000001 |
| EndDoc | Bates number of the last page of the document. | All | Prefix-0000000002 |
| BegAttach | Bates number of the first page of the first document of the document family. | All | Prefix-0000000001 |
| EndAttach | Bates number of the last page of the last document of the document family. | All | Prefix-0000000004 |
| PageCount | Number of printed pages in the document. | All | 2 |
|  |  |  |  |
| Confidentiality Designation | Confidentiality designation, if any, of the document | All | Confidential Highly Confidential |
| Custodian | Names of all custodians who possessed the document, including deduplicated values.  For documents from centralized repositories where custodian name(s) are unavailable, identifying source information should be provided. | All | Doe, John; Smith, John; Smith, Jane |
| All Custodians | Names of all custodians who possessed the document. | All |  |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
|  |  |  |  |
| Subject/E-Subject | Subject line of an e-mail. | E-mails | Text of the subject line |
| To | All recipients that were included on the "To" line of the e-mail. | E-mails | John.Doe@e-mail.com |
| From | The name and e-mail address of the sender of the e-mail. | E-mails | Jane.Doe@e-mail.com |
| CC | All recipients that were included on the "CC" line of the e-mail. | E-mails | Bill.Black@email.com |
| BCC | All recipients that were included on the "BCC" line of the e-mail. | E-mails | ceo-gs@email.com |
| DateSent | Date an e-mail was sent. | E-mails | 01/01/2015 |
| TimeSent | Time an e-mail was sent. | E-mails | 12:30:00 |
| DateModified | Date the document was last modified. | E-attachments; | 01/01/2015 |
| TimeModified | Time the document was last modified. | E-attachments; Electronic documents | 12:30:00 |
| Last Modified By | Identification of user responsible for last modification of document. | E-attachments; electronic documents | John Doe |
| DateCreated | Date the document was created. | E-attachments; Electronic documents | 01/01/2015 |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| TimeCreated | Time the document was created. | E-attachments; Electronic documents | 12:30:00 |
| DateReceived | Date email was received. | E-mails | 01/01/2015 |
| TimeReceived | Time email was received. | E-mails | 12:30:00 |
| DateAccessed | Date document last accessed | Electronic documents; | 01/01/2015 |
| Date Last Saved | Date the document was last saved. | E-attachments; Electronic documents | 01/01/2015 |
| Redaction | Noting document contains redactions. | E-attachments; Electronic documents | Redacted |
| FileName | File name of original document. | Electronic documents; E-attachments | Microsoft Word 2007/2010 |
| File Type | Application type. | Electronic documents; E-attachments | Word |
| File Extension | The file extension of the document. | E- attachments; Electronic documents | .doc |
| NativeLink | Relative file path to each native file on the production media. | All documents produced in native format | \Natives\Document 12345.doc |
| Author | Document author/creater | E- attachments; Electronic documents | John Doe |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Title | Document Title | E- attachments; Electronic documents | Text of the title line |
| HASH | MD5 or SHA-1 Hash value | Electronic documents; E-attachments; E-mails | |
| Prod Volume | Production Volume | All | Defendant X Volume 1 |
| File Path | | All | |
| | | | |
| | | | |
| | | | |
| CALENDAR MEETING START | | Calendar invitations | |
| CALENDAR MEETING STOP | | Calendar invitations | |
| MESSAGE ID | | Emails | |
| TextPath | Relative file path to each extracted text/OCR text file on the | All | \Text\Document_12345.txt |

4